WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Victor Gonzalez,<br><br>　　　　　Defendant. | No. CR-19-01092-004-TUC-JGZ (BGM)<br><br>ORDER |

Pending before the Court is Magistrate Judge Bruce G. Macdonald's Report and Recommendation (R&R) recommending that the District Court grant Defendant Victor Gonzalez's Motion to Suppress Fourth Amendment and deny his Motion to Suppress Violation of *Miranda*. (Doc. 203.)  Defendant Gonzalez filed an objection to the recommendation that the Court deny the *Miranda* motion. (Doc. 210.)  The United States filed an objection to the Magistrate Judge's recommendation that the Court grant the Fourth Amendment motion. (Doc. 214.)  Gonzalez filed a supplement to the record on July 27, 2020. (Doc. 217.)

After an independent review of the parties' briefing and of the record, the Court will adopt Judge Macdonald's recommendation in part, and deny both motions.

**STANDARD OF REVIEW**

When reviewing a Magistrate Judge's Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the

magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## DISCUSSION

### I.     Background

The R&R sets forth the factual background, summarizing the testimony of the witnesses at the February 3, 2020 evidentiary hearing, and Magistrate Judge Macdonald's findings.  The parties do not object to any specific factual finding set forth in the Report. The Court restates the facts necessary to address the parties' objections.

**A. Traffic Stop on April 8, 2019, and Defendant's Statements on that Date**

On April 8, 2019, Arizona Department of Public Safety Trooper Christopher Amick, who was on patrol on Interstate 19, stopped a Lincoln Navigator traveling southbound towards Nogales, Mexico, after a records check showed the license plate was suspended for a mandatory insurance suspension, a violation of the Arizona traffic code. *See* A.R.S. § 28-4139(A). (Doc. 203, pp. 2-3.) Trooper Amick questioned the driver, Victor Gonzalez, and passenger, Jose Alberto Diaz, asking for registration and insurance paperwork and asking where they were coming from. (*Id*. at 3-5.) He noted that they seemed nervous and that they offered conflicting stories. (*Id*. at 4-5.) Gonzalez was unable to produce proof of insurance and Trooper Amick ultimately issued him a warning for displaying plates suspended for financial responsibility. (*Id*. at 3, 5.)

Trooper Amick testified that when he returned the paperwork to Gonzalez, and as Gonzalez turned to return to his vehicle, Trooper Amick asked if he could speak with him further. (*Id*. at 5.) Trooper Amick acknowledged that at this point, his enforcement action was completed. (*Id*.) Gonzalez agreed to speak with Trooper Amick. (*Id*.) Trooper Amick subsequently asked for consent to search the vehicle because the conflicting stories by Gonzalez and Diaz indicated some sort of deception. (*Id*.) He did not know what specific

crime may have occurred but he was suspicious that something was going on. (*Id*.) Gonzalez did not hesitate and granted consent to search and he signed a written consent form. (*Id*. at 6.)[1]

During the search, Trooper Amick discovered approximately 10,000 rounds of ammunition in the back cargo area of the Navigator. (*Id*. at 6-7.) Based on Gonzalez's statement that he was traveling to Nogales and the large amount of ammunition, Trooper Amick detained Gonzalez and Diaz, called the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and waited for a special agent to arrive. (*Id*. at 7.) Special Agents Jacob Boisselle and Rob Kilcoyne arrived on the scene and SA Boisselle spoke with Trooper Amick, who described the situation. (*Id*.) After that conversation, Trooper Amick had no further involvement. (*Id*.)

While SA Boisselle spoke to Trooper Amick, SA Kilcoyne spoke to Diaz. (*Id.* at 7-8.) Then both agents spoke to Gonzalez. (*Id*. at 8.) The agents escorted Gonzalez to their vehicle and removed his handcuffs. (*Id*.) They told him that they were going to talk to him about the ammunition in the vehicle, and SA Boisselle advised Gonzalez of his *Miranda* rights. (*Id*.) Gonzalez agreed to waive his rights and signed a waiver of rights form. (*Id*.) Gonzalez testified at the evidentiary hearing that he voluntarily signed the waiver of rights form before he talked to the agents. *(Id.)* SA Boisselle testified that Gonzalez was honest and forthcoming during the investigation. (*Id*.) Upon completion of the investigation, Gonzalez was released. (*Id*.)

---

[1] Gonzalez testified that just about everything Trooper Amick said was untrue. He testified that Amick did not ask him where he was going until after Trooper Amick returned from his patrol vehicle; that Gonzalez showed Amick his proof of insurance; Amick had not given him a warning; he did not consent to a search of his vehicle; he was not given any paperwork/citation until he was released and on the way to the shuttle; once Gonzalez declined the search, Amick said he was going to call for a search warrant or canine; Amick did not have a canine with him; and once Amick said he would get a search warrant, then Gonzalez agreed to the search and signed the consent form. (Doc. 203, p. 6.)

The Magistrate Judge did not credit Gonzalez's testimony, finding it dubious and self-serving, in contrast to Trooper Amick's, which the judge found to be "honest and forthcoming." (Doc. 203, p. 14.) The parties do not specifically object to the Magistrate Judge's factual findings and credibility determinations. Having reviewed the record, the Court agrees with Magistrate Judge Macdonald's findings and sees no basis for overturning these credibility determinations.

**B. Statements made by Gonzalez on May 28, 2019**

On May 23, 2019, an arrest warrant for Gonzalez issued. (*Id.* at 8.) Gonzalez was arrested on the warrant on May 28, 2019, while entering the United States at the Nogales Port of Entry. (*Id.*) SA Boisselle and SA Red responded to the Port of Entry and explained to Gonzalez that they were going to transport him to the HSI Nogales office to process him. SA Boisselle testified that he initially did not ask Gonzalez any questions because of all of the information that he had from the initial interview. (*Id.* at 8-9.) Gonzalez was not read *Miranda* warnings. (*Id.*) SA Boisselle testified that once they were in the car, Gonzalez, unsolicited, stated that during the initial interview he had described the person to whom the ammunition was going using a nickname but then offered the individual's actual name, and Gonzalez expressed a desire to assist with the investigation. (*Id.* at 9.)[2] SA Boisselle testified that Gonzalez made further statements about co-conspirators involved in the offense. (*Id.*) Gonzalez never indicated that he wished to stop talking further or invoked his *Miranda* rights. (*Id.*) For a long portion of the drive, Gonzalez used the agent's cellular telephone to talk with his wife and son in Mexico. (*Id.*) After transporting Gonzalez to the detention facility, SA Boisselle did not have further contact with him. (*Id.*)

**C. Statements made by Gonzalez on May 29, 2019**

The following day Special Agents Brandt and Red transported Gonzalez to the federal courthouse for an initial appearance. (*Id.*) SA Brandt had not had any prior involvement in the investigation of Gonzalez or his co-defendants. (*Id.*) SA Brandt testified that they picked up Gonzalez at the Pima County jail and took custody of him. (*Id.* at 9-10.) At the jail, Gonzalez had changed into street clothes that the agents brought for him. (*Id.* at 10.) Once they were outside, SA Red showed Gonzalez two photographs of individuals who were potentially involved in the investigation. (*Id.*) According to SA

---

[2] Gonzalez denied that he volunteered the information and testified that SA Red questioned him regarding Duende's real name and who else was involved. (Doc. 203, p. 9.) Gonzalez suggested that SA Red must have gotten Duende's name by reviewing Gonzalez's phone which was seized on April 8 by SA Kilcoyne. Gonzalez testified that he had authorized SA Kilcoyne to search his phone on April 8 after Kilcoyne said he would call for a search warrant if Gonzalez did not unlock it. (Doc. 203, p. 9; Doc. 155, p. 104.)

Brandt, Gonzalez was a friendly, likeable person. (*Id.*) SA Brandt testified that Gonzalez acted affirmatively regarding the individuals depicted. (*Id.*)[3] No further questions were asked of Gonzalez. (*Id.*) No *Miranda* warnings were given to Gonzalez. (*Id.*)

### D. Charges and Pending Motions

Gonzalez is charged with one count of conspiracy to smuggle firearms and ammunition from the United States into Mexico in violation of 18 U.S.C. §§ 371, 554(a), and one count of smuggling ammunition into Mexico in violation of 18 U.S.C. § 554(a).

In his pending motion to suppress evidence, Gonzalez moves for the suppression of evidence seized during the April traffic stop, including his statements. (Doc. 76.) Gonzalez argues that the seizure of his vehicle was without reasonable suspicion that a statutory violation had occurred; his detention exceeded the justification for the stop as it was unnecessarily prolonged; and he was arrested without probable cause. In a separate motion, Gonzalez moves to suppress the statement he made on May 29 because agents failed to give him *Miranda* warnings. (Doc. 75.)

## II.  Analysis

### A. Motion to Suppress Evidence

The Magistrate Judge recommends granting the motion to suppress evidence obtained during the April 8 stop of the Navigator because the traffic stop was completed when Trooper Amick asked to speak further with the Gonzalez as he was walking toward his vehicle, and because Trooper Amick did not have reasonable suspicion to extend the traffic stop. (Doc. 203, pp. 14-15.) The United States objects to that conclusion, arguing that (1) the subsequent interaction between the Gonzalez and Trooper Amick was consensual, and (2) reasonable suspicion of additional criminal activity existed. Gonzalez did not file a response to the government's objections. (Doc. 214.)

The Court agrees with the Magistrate Judge's conclusion that Trooper Amick had reasonable suspicion to conduct an investigatory stop of the Navigator based on Trooper Amick's credible testimony that he stopped the Navigator after a license plate inquiry

---

[3] In his testimony, Gonzalez denied recognizing any of individuals depicted. (Doc. 203, p. 10.)

- 5 -

indicated that there was a mandatory insurance suspension on the plate in violation of the Arizona traffic code.   (Doc. 203, p. 12.)  The Court also agrees that Judge Macdonald correctly concluded, as Trooper Amick testified, that the traffic stop was completed at the point when Trooper Amick returned the paperwork to Gonzalez and asked to speak to Gonzalez further; at this point, the justification for the stop had ended and reasonable suspicion to extend the search was lacking.  (*Id*. at 14.)  As stated by Judge Macdonald, "Trooper Amick did not have any other reason for extending the stop and seeking permission to search beyond his hunch that criminal activity was afoot.  This is insufficient under the Fourth Amendment." (*Id*. at 15.)

The Magistrate Judge mentioned that Trooper Amick asked for consent to extend the stop, but did not address the effect of Gonzalez's affirmative response to that request. (*Id.* at 214.) The Court concludes that the testimony in the record supports the extension of the stop based on Gonzalez's consent. "[T]raffic stops can last only as long as is reasonably necessary to carry out the 'mission' of the stop, unless police have an independent reason to detain the motorist longer." *United States v. Gorman*, 859 F.3d 706, 714 (9th Cir. 2017). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (alteration in original). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* However, "an officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). Moreover, consensual encounters with the police do not implicate the Fourth Amendment, and therefore no reasonable suspicion is required if consent is obtained. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). A police officer may extend a traffic stop based on the consent of the person stopped. *See, e.g.*, *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019) ("A police officer can extend the duration of a routine traffic stop only if the driver gives consent or if there is reasonable suspicion that

an illegal activity occurred."). But the police must "not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 435.

Once Trooper Amick completed his inquires surrounding the traffic stop, issued Defendant a written warning and returned his paperwork, Gonzalez was free to leave, as evidenced by his own conduct in returning back to his car. Trooper Amick did not indicate in any way that Defendant had to stay and talk to him. He asked if he could speak with him further. Defendant did not hesitate in saying, "Yes." Under the totality of the circumstances, the Court finds that Defendant voluntarily consented to extend the traffic stop to interact further with Trooper Amick. *See United States v. Mendenhall*, 446 U.S. 544, 557 (1980) (whether consent is voluntary "is to be determined by the totality of all the circumstances").

Similarly, Trooper Amick did not act impermissibly when he asked Gonzalez for consent to search the vehicle. *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (permissible questions during a consensual encounter "include a request for consent to search"). Gonzalez consented to a search of the vehicle and signed a consent form memorializing his consent. Gonzalez's arguments that he did not voluntarily sign the form are resolved by the Magistrate Judge's finding that Gonzalez's testimony was not credible, a finding with which this Court agrees. The Court will therefore deny Defendant's Motion to Suppress Fourth Amendment.

**B. Motion to Suppress Statements**

Judge Macdonald found that Defendant's statements on May 29, were admissible because Defendant had been given *Miranda* warnings on April 8, 2019, and Defendant had testified that his waiver of those rights was voluntary. (Doc. 203, pp. 16-17.) The Judge noted that no per se rule mandates "that statements made after *Miranda* warning are administered are [] inadmissible if the warnings become 'stale.'" (*Id*. (internal citations omitted).) The Judge also noted that the law presumes that "an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." (*Id*. (internal

citations omitted).) Applying the "totality of the circumstances" test for waiver, and considering the testimony of the witnesses, Judge Macdonald concluded there was no suggestion that Gonzalez's statement on May 29 was coerced or improperly induced. (*Id.*) The Magistrate Judge did not address the admissibility of Gonzalez's statements to agents on May 28, 2020.[4]

Gonzalez, in a sparse objection, argues that all of his statements should be suppressed because they resulted from Trooper Amick's unlawful search and seizure of the Navigator on April 8, and are fruits of that illegal conduct. (Doc. 210, pp. 1-2.) In addition, Defendant argues that his statements on May 28 and May 29 must be suppressed because no *Miranda* warnings were given. (*Id.* at 2.) Because the Court has concluded that the April 8 traffic stop was lawful, Gonzalez's argument that all statements subsequent to the stop are the fruit of the poisonous tree fails. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (holding that the first step to applying the exclusionary rule is to establish an illegality). The Court agrees with Judge Macdonald's conclusion that Gonzalez's statements on May 29 were voluntary and admissible. The Court further concludes that Gonzalez's statements on May 28 are admissible because they were not the result of interrogation.

For police statements to be considered an "interrogation," they "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980.) Voluntary statements are not the product of interrogation. *Id.* The term "interrogation" means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Id.* at 301. Here Gonzalez was not subject to custodial interrogation requiring *Miranda* warnings on May 28th, because he initiated the conversation with the agents. Gonzalez was aware of and understood his

---

[4] Defendant's motion to suppress for *Miranda* violations only referred to and sought suppression of Gonzalez's May 29 statements. (Doc. 75.) Gonzalez argued that law enforcement initiated a custodial interrogation while transporting him to federal court on May 29. (*Id.*) At the evidentiary hearing, in a closing argument, Gonzalez's counsel argued that *Miranda* violations occurred on May 28th and the 29th. (Doc. 155, pp. 136-137.) Defendant's objection to the R&R references both the 28th and 29th dates. (Doc. 210, p. 2.)

*Miranda* rights. He was read his rights on April 8, 2019; he acknowledged that he understood those rights; and he waived his rights on that date by signing a waiver form that set forth the rights. SA Boisselle testified that he didn't initially ask Gonzalez any questions on May 28th, because of all of the information that he had from the initial interview, but in the car, Gonzalez, unsolicited, offered information about the person to whom the ammunition was going. Gonzalez expressed a desire to assist with the investigation. He made statements about co-conspirators involved in the offense. Gonzalez never indicated that he wished to stop talking further or invoked his *Miranda* rights and, for a long portion of the drive, Gonzalez used the agent's cellular telephone to talk with his wife and son in Mexico. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) (the law presumes "an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford"). Although Gonzalez testified that he did not initiate conversation with the agents, the Magistrate Judge credited the agent's testimony, and found Gonzalez was not credible.[5] Importantly, Gonzalez does not dispute Judge Macdonald's conclusion that there was no coercion or inducement on the part of the agents on May 28th or May 29th. (Doc. 210, p. 2.)

The totality of the circumstances also support the Magistrate Judge's conclusion that Gonzalez's statement on May 29th was the result of a voluntary waiver of his *Miranda* rights. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis,* 560 U.S. at 384. As detailed above, Gonzalez was aware of and understood his *Miranda* rights. He was read his rights on April 8, 2019; he acknowledged that he understood those rights; and he waived his rights on that date by

---

[5] The record supports this credibility determination. Gonzalez, on cross-examination, admitted that he did want to help out the agents and he wanted to help himself, and that's why he gave them information. (Doc. 155, pp. 116-118.) Moreover, Gonzalez had talked with agents on April 8; he used an agent's phone to make a lengthy personal call during the transport on May 28; the agents testified that Gonzalez was likeable, friendly and got along well with the agents; and Gonzalez's testimony corroborated the agents' testimony that he got along well with the agents.

signing a waiver form that set forth those rights. On May 28th, he waived those rights, and initiated a conversation with the agents because he wanted to help himself and help the agents. On May 29th, before getting into the vehicle for transport, SA Red showed Gonzalez photographs related to subjects Gonzalez had spoken about the previous day. Gonzalez briefly responded to SA Red regarding the photographs, and no further questions were asked. Again, importantly, Gonzalez does not dispute Judge Macdonald's conclusion that there was no coercion or inducement on the part of the agents on May 28th or May 29th. (Doc. 210, p. 2.)

Judge Macdonald acknowledged that a significant period of time had elapsed between Gonzalez's April 8th waiver of *Miranda* rights, and the presentation of the photographs on May 29, but also noted that Gonzalez testified that he got along well with SA Red and wanted to help both SA Red and himself out by talking. Moreover, this Court finds significant the fact that Gonzalez voluntarily initiated the conversation the previous day, and that there was no coercion or inducement on the part of the agents on either day. Moreover, the record does not suggest there was any hesitation in Gonzalez's response to Agent Red's sole question on May 29th. (Doc. 203, pp. 16-17.) Other than the passage of time, Gonzalez does not point to any other circumstance that "suggests the effectiveness of the earlier *Miranda* warnings was diminished." *Guam v. Dela Pena*, 72 F.3d 767, 769 (9th Cir. 1995). And, contrary to defense counsel's argument, "[a] rewarning is not required simply because there is a break in questioning." *Id.* at 770. "The Supreme Court has eschewed per se rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir. 2005).

In sum, Gonzalez understood his rights and made a deliberate choice to relinquish those rights on May 28 and 29, in order to help himself out, and without any coercion on the part of the agents. Therefore, the Court will deny Defendant's Motion to Suppress Violation of *Miranda*.

//

**CONCLUSION**

**IT IS ORDERED** that the Report and Recommendation (Doc. 203) is **ADOPTED IN PART**, as set forth in this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress 4th Amendment (Doc. 76) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Violation of *Miranda* (Doc. 75) is **DENIED**.

Dated this 27th day of August, 2020.

Honorable Jennifer G. Zipps
United States District Judge